UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| In re<br><br>MARIE MAUD CRICHLOW,<br><br>Debtor | Chapter 13<br>Case No. 04-18735-RS |

MEMORANDUM OF DECISION ON
MOTION OF DEBTOR FOR STAY PENDING APPEAL

The Debtor, Marie Maud Crichlow, has asked this Court to stay pending appeal an order granting to Sandra DaSilva relief from the automatic stay to evict the Debtor from the property in which the Debtor resides. DaSilva opposes the motion. For the reasons set forth below, the Court will deny the requested stay.

**Facts and Procedural History**

The facts and procedural history are as follows. As of October 21, 2004, the Debtor owned and resided in the real property at 59 Amor Road, Milton, Massachusetts, but her interest in that property was subject to a mortgage, and that mortgage was in distress. On October 21, 2004, the mortgagee conducted a foreclosure sale of the property. Sandra DaSilva was the high bidder at foreclosure, and, on that same day, she and the foreclosing mortgagee signed a Memorandum of Terms and Conditions of Sale (the "Memorandum"). The Memorandum provided that the "sale shall not be deemed completed until the Buyer has made his or her deposit and has signed this Memorandum of Sale." The record does not indicate when and whether the Buyer made her deposit. The Debtor filed her petition for relief under Chapter 13 of the Bankruptcy Code on October 27, 2004, thereby commencing this bankruptcy case, and only later (the precise date is not clear) did DaSilva pay the balance of the purchase price to the mortgagee and receive from the mortgagee the deed to the property. She recorded the deed on November

17, 2004. That same day, the Debtor had filed a Chapter 13 plan in which she proposed to cure the arrearage on the mortgage that had been foreclosed upon.

DaSilva then moved in the bankruptcy case for relief from the automatic stay to evict the Debtor. The Debtor opposed the motion, arguing that, because the mortgagee had not actually transferred the property to DaSilva by the date of the Debtor's bankruptcy filing, the property had not yet been sold, and therefore § 1322(c)(1) of the Bankruptcy Code treated the sale as incomplete and permitted the Debtor to cure her mortgage arrears through the Chapter 13 plan and, in essence, to treat the foreclosure and subsequent signing of the Memorandum as *not* having terminated her equity of redemption, notwithstanding Massachusetts law to the contrary.[1] On February 16, 2005, the Court (Hillman, J.) granted relief from the automatic stay to evict the Debtor. In the memorandum of decision he issued in support of the order, Judge Hillman disagreed with the Debtor, ruling that, for purposes of § 1322(c)(1), a Massachusetts foreclosure sale would be deemed complete upon the signing of the memorandum of sale, because it is this event that, under Massachusetts law, terminates the mortgagor's equity of redemption. Judge Hillman concluded that, as of the date of her bankruptcy filing, the Debtor's equity of redemption had been terminated; that she therefore no longer had an ability to cure her mortgage through a Chapter 13 plan; and, accordingly, that it was appropriate to grant DaSilva relief from the stay to evict.

The Debtor timely appealed from the order and elected to have the appeal heard by the United States District Court. The record on appeal was transmitted to the District Court on March 31, 2005. A briefing schedule has been set, but the Debtor has moved to continue it

---

[1] Under § 1322(c)(1), the Debtor's default may be cured "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1).

pending resolution of a second motion he has filed in the appeal, a motion to have certain issues on appeal certified to the Massachusetts Supreme Judicial Court.

After she received relief from the automatic stay to evict, DaSilva sought and obtained an order in the state court to evict the Debtor; and she intends to enforce that order upon expiration of the time to appeal from it.

In the meantime, the Debtor and her teenage children continue to occupy the property. The Debtor is and has been setting aside $3,100 per month (into an account held by her attorney) in order to fund payments to her mortgagee, should she prevail on her appeal and her plan be confirmed. However, she is under no obligation to be setting aside these payments. Also, by virtue of an order of this Court entered on April 4, 2005, DaSilva's administrative claim for postpetition use and occupancy of the property was allowed in the amount of $7,000 for use and occupancy up to March 1, 2005, and the Debtor was further ordered to make monthly use and occupancy payments in the amount of $2000 per month—which, according to DaSilva, was the fair rental value of the premises—commencing March 1, 2005. (Though the Debtor initially contested the monthly payment obligation, she has since conceded that $2000 per month constitutes fair rental value.) It is not clear whether she is current on these obligations to DaSilva. And the Court is skeptical that the Debtor has the wherewithal to fund both monthly use and occupancy payments of $2,000 and monthly set asides of $3,100 at the same time.

DaSilva bought the property with the intention of occupying it with her own family, and she is understandably determined to do so. She incurred approximately $500,000 in debt to purchase the property, and that debt is secured by mortgages on her current home and on her father's home. She remains responsible for servicing this debt, and for taxes, insurance, and maintenance of the property, even while she cannot occupy the property. This imposes on her a

3

substantial financial burden because she cannot sell or rent her current home while the Debtor continues to occupy the Amor Road property.

## Discussion

A party moving for stay pending appeal "must establish that there is a strong likelihood of success on the merits of its appeal; that he will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay." *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 804 n.31 (1st Cir. 1991); *In re Miraj and Sons, Inc.*, 201 B.R. 23 (Bankr.D.Mass. 1996). The public interest prong of this standard is not implicated here, but the Court's analysis as to the three remaining requirements is set forth below.

### 1. Likelihood of Success on Appeal

While the Debtor's appeal is not frivolous, she does not have a strong likelihood of success on appeal or, in the formulation the Debtor urges, a "substantial case" or "strong case on appeal." Judge Hillman's memorandum of decision is solid in its reasoning. As Judge Hillman makes clear, under long-settled Massachusetts law and conveyancing practice, a debtor's equity of redemption is terminated upon the signing of the memorandum of sale. It was this event that effectuated, in essence, a transmittal to the mortgagee of the equity of redemption. Though the signing of the memorandum of sale was not the final step between the mortgagee and the buyer at foreclosure, the signing of the memorandum *was* the final act insofar as the mortgagor's equity of redemption was concerned. Indeed, it is this event that makes the sale a "foreclosure" at all: under Massachusetts law, it is (undisputedly) the signing of the memorandum that forecloses the

4

equity of redemption.[2] The remaining events between mortgagee and buyer have no further foreclosing effect. Absent substantial evidence of legislative intent to the contrary, it would strain credulity—my own, at least—to conclude that Congress meant by § 1322(c)(1) to override state mortgage laws with respect to the termination of the equity of redemption. This would make the post-foreclosure status of the equity of redemption dependent on whether the Debtor filed a petition under Chapter 13 of the Bankruptcy Code and even on whether the Debtor elected to use § 1322(c)(1) in his or her Chapter 13 plan.[3] For these reasons and those articulated by Judge Hillman, I conclude that the Debtor's likelihood of prevailing on appeal is neither strong nor substantial.

### 2. Irreparable Harm to Debtor

If the stay were not granted, the Debtor would be harmed by having to relocate her family for an indefinite time, which would be disruptive to her family's life, but not likely a cause of irreparable harm. Financially, this relocation would not be prohibitive; if the Debtor were to relocate, she could finance the new residence with the $2,000 per month that she is now obligated to pay to DaSilva, augmented (if necessary) by some of the $3,100 she is setting aside each month in anticipation of funding the Chapter 13 plan that she has proposed. Of course, to the extent that she needs to dip into this $3,100, she will be compromising her ability to honor

---

[2] See BLACKS LAW DICTIONARY 646 (6th ed. 1990), defining "foreclose" as "method of terminating mortgagor's right of redemption" and "foreclosure" as "to shut out, to bar, to destroy an equity of redemption."

[3] Other possible treatments of the mortgagee's secured claim in the plan would not involve § 1322(c)(1) and therefore would not revive the equity of redemption. Moreover, a plan can be amended at any time during the life of the case, so the status of the equity of redemption could remain in suspense for years, until the case was closed.

her obligations under the plan to cure and remain current on the mortgage. Still, the Debtor has not shown that it would be necessary to dip into the $3,100 to fund alternate living arrangements. Nor has she made even an offer of proof that the plan she has proposed is financially feasible.

### 3. Comparison to Harm to DaSilva

The harm that DaSilva would suffer is more certain. She has undertaken significant financial obligations to fund the purchase of this property, and, for as long as she is prohibited from moving into it, she will be squeezed by her inability to use her current residence in order to alleviate the cost of financing and maintaining the new. Given that the Debtor is in bankruptcy, the Debtor will not likely be able to make DaSilva whole for any loss she might sustain on account of this dual burden. On balance, the Court concludes that the harm that DaSilva would suffer if a stay were granted is more significant and more likely irreparable than that which the Debtor would suffer if the requested stay were denied.

Given this balance of harms and the conclusion above as to the likelihood of success on appeal, the Court concludes that the stay should be denied. A separate order will enter denying the motion for stay pending appeal.

Date: *May 13, 2005*                   /s/ *Robert Somma*
                                        Robert Somma
                                        United States Bankruptcy Judge

cc: David Baker, Esq., for Debtor
    Leslie Sammon, Esq., for Sandra DaSilva
    Doreen Solomon, Esq., Chapter 13 Trustee